**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 5, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARY BISHOP; SHARON
BALDWIN; SUSAN G. BARTON;
GAYE E. PHILLIPS, individuals,

     Plaintiffs - Appellees,

v.

OKLAHOMA, STATE OF, ex rel.,
DREW EDMONDSON in his official
capacity as Attorney General and
BRAD HENRY in his official capacity
as Governor,

     Defendants - Appellants.

UNITED STATES OF AMERICA, ex
rel., ERIC HOLDER, in his official
capacity as Attorney General and
BARACK H. OBAMA in his official
capacity as President,

     Defendant

No. 06-5188
N.D. Okla.
(D.C. No. 04-CV-848-TCK)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN, McKAY** and **HOLMES**, Circuit Judges.

---

[*] This order and judgment is not binding precedent. 10th Cir. R. 32.1(A). Citation to orders and judgments is not prohibited. Fed. R. App. 32.1. But it is discouraged, except when related to law of the case, issue preclusion or claim preclusion. Any citation to an order and judgment must be accompanied by an appropriate parenthetical notation -- (unpublished). 10th Cir. R. 32.1(A).

After examining the briefs and appellate record, this panel determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case was therefore ordered submitted without oral argument.

In this case, we must determine whether appellants, the Governor and Attorney General of the State of Oklahoma (together, the Oklahoma officials), are sufficiently connected to the enforcement of the Oklahoma Constitution's marriage provisions to establish plaintiffs' Article III standing and, if so, whether the *Ex parte Young* exception to the State's Eleventh Amendment immunity applies. *Ex Parte Young*, 209 U.S. 123 (1908). The district court denied the Oklahoma officials' motion to dismiss, concluding the plaintiffs, two lesbian couples, had standing and the suit could go forward under *Ex parte Young*. *See Bishop v. Oklahoma ex rel. Edmondson*, 447 F. Supp.2d 1239 (N.D. Okla. 2006). Exercising jurisdiction under the collateral order exception to 28 U.S.C. § 1291,[2] we reverse.

## I. BACKGROUND

This lawsuit was brought by two lesbian couples (together, the Couples)

---

[2] The collateral order exception to 28 U.S.C. § 1291 "provides for interlocutory appeal of orders denying motions to dismiss brought on the basis of Eleventh Amendment immunity as the basis for appellate jurisdiction." *Opala v. Watt*, 454 F.3d 1154, 1157 (10th Cir. 2006).

challenging the federal Defense of Marriage Act (DOMA)[3] and Oklahoma's

amendment to its Constitution (Oklahoma Amendment) prohibiting same sex

couples from being married in Oklahoma and the recognition of out-of-state same

sex marriages. Because the federal law is not at issue on appeal, we address only

---

[3] The Couples' complaint challenged the substantive provision of § 2, codified at 28 U.S.C. § 1738C, which provides:

> No State, territory, or possession of the United States, or Indian tribe, shall be required to give effect to any public act, record, or judicial proceeding of any other State, territory, possession, or tribe respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State, territory, possession, or tribe, or a right or claim arising from such relationship.

The Barton Couple also contest the substantive provision of § 3, codified at 1 U.S.C. § 7, which provides:

> In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word "marriage" means only a legal union between one man and one woman as husband and wife, and the word "spouse" refers only to a person of the opposite sex who is a husband or a wife.

The district court concluded neither couple had standing to bring suit based on § 2 of the DOMA – the Bishop Couple because they had not entered into a civil union in any State, and the Barton Couple because Vermont does not treat its civil union as a "marriage" and because the Full Faith and Credit Clause applies only to marriages in the United States. The court, however, found the Barton Couple had standing for purposes of their § 3 claim at the motion to dismiss stage and their Equal Protection and Due Process claims survived, at least until the summary judgment stage. Accordingly, the district court dismissed all the federal claims except the Barton Couple's Equal Protection and Due Process claims challenging the substantive portion of § 3 of the DOMA. The federal defendants did not appeal this ruling.

the Oklahoma Amendment.

A. The Oklahoma Amendment

On November 2, 2004, Oklahoma voters approved legislative referendum

No. 334, which amended the Oklahoma Constitution to add, in pertinent part:

> **Marriage defined–-Construction of law and Constitution–-Recognition of out-of-state marriages--Penalty**
>
> A. Marriage in this state shall consist only of the union of one man and one woman . . . . [No] provision of law shall be construed to require that marital status or the legal incidents thereof be conferred upon unmarried couples or groups.
>
> B. A marriage between persons of the same gender performed in another state shall not be recognized as valid and binding in this state as of the date of the marriage.
>
> C. Any person knowingly issuing a marriage license in violation of this section shall be guilty of a misdemeanor.

*See* Okla. Const. art. 2, § 35.

B. Procedural Background

Mary Bishop and Sharon Baldwin (the Bishop couple) exchanged vows in a

church ceremony in March 2002 and now wish to be civilly married in Oklahoma.

Susan Barton and Gay Phillips (the Barton couple) were joined in a civil union in

Vermont and legally married in Vancouver, British Columbia, Canada. They wish

to have either or both ceremonies recognized in Oklahoma. To achieve their

goals, the Couples sought, *inter alia*, a declaration that the Oklahoma Amendment

is unconstitutional, specifically, it violates the Due Process Clause, the Equal

Protection Clause, the Full Faith and Credit Clause and the Privileges and Immunities Clause.

In response to the Couples' complaint, the Oklahoma officials moved to dismiss, claiming venue was improper in the Northern District of Oklahoma, the Couples lacked standing and the suit was barred by the Eleventh Amendment. The district court determined the Couples lacked standing to challenge subsection B of the Amendment because neither couple were "married" in another state as required by subsection B. As to subsection A, the court concluded the Couples had standing because they wished to be married in Oklahoma but subsection A precluded them from being married; there is a causal connection between that injury and the Amendment; and a declaration that the Amendment is unconstitutional will redress their claims. The court further determined venue was proper and the *Ex parte Young* exception to sovereign immunity applied.

On appeal, the Oklahoma officials challenge only the ruling regarding the *Ex parte Young* doctrine. Unfortunately, the unique procedural stance of this appeal has deprived this Court of a full briefing of the issues. While the standing issue was briefed in the district court, it has not been raised on appeal. In addition, the Couples chose not to take advantage of several opportunities to file a compliant brief with this Court and the Oklahoma officials decided to forego oral

argument.[4]  Nonetheless, jurisdictional considerations, while intertwined in the *Young* doctrine, remain our first order of business and we have authority to examine Article III standing *sua sponte*.  *See Alvarado v. KOB-TV, LLC.*, 493 F.3d 1210, 1214 n.1 (10th Cir. 2007).  Because the plaintiffs failed to name a defendant having a causal connection to their alleged injury that is redressable by a favorable court decision, we conclude the Couples do not have standing.  *See Id.*

## II.  DISCUSSION

"Before we address the merits of [a] case, . . . we must first determine whether the federal district court, and likewise this court, has subject-matter jurisdiction over the dispute."  *In re Aramark Leisure Serv's*, 523 F.3d 1169, 1173 (10th Cir. 2008).  "Article III standing requires that a plaintiff allege an injury-in-fact that has a causal connection to the defendant and is redressable by a favorable court decision."  *Opala,* 454 F.3d at 1157.

*Bronson v. Swensen* is a mirror-image of the case before us.  500 F.3d 1099 (10th Cir. 2007).  There, we considered the constitutional challenge to Utah's polygamy statutes naming Sherrie Swensen, the Clerk of Salt Lake County, Utah,

---

[4] On January 5, 2007, the Couples were advised that their brief (due December 29, 2006) was late and unless a brief was filed within ten calendar days, we would apply Fed. R. App. P. 31(c), denying them an opportunity to participate in oral argument.  On January 20, they filed a late and deficient brief. On January 23, we gave the Couples another opportunity, until February 6, to file a compliant brief.  On February 9, we provided them with a final opportunity to file a compliant brief by February 19.  On March 2, 2007, having received no response from the Couples, we deemed the appeal fully briefed.

as the only defendant.  The plaintiffs, a married couple and the husband's fiancé, claimed, *inter alia*, Utah's criminal prohibition of polygamy  violated the federal constitution.  We concluded the plaintiffs lacked standing because, among other things, they could not show causation or redress ability in a suit against the County Clerk.  As to causation, they had not shown "a substantial likelihood that the *defendant's conduct* caused plaintiff's injury in fact" because the County Clerk had no authority to initiate a criminal prosecution against them.  *Id.* at 1110 (quotations omitted).  Similarly, because an injunction against the Clerk would not shield them from the claimed injury, prosecution for bigamy, the plaintiffs failed to establish redressability.  *Id.* at 1111-12 ("Enjoining *this defendant* from enforcing [Utah's criminal prohibition of polygamy] would be a meaningless gesture.").  Thus, without mention of sovereign immunity or *Ex parte Young*, we determined the plaintiffs lacked Article III standing.[5]

---

[5]  On appeal, the Oklahoma officials argue only the improper application of the *Ex parte Young* exception.  While we need not reach this issue, we note in *Ex parte Young*, the Supreme Court said: "In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party."  209 U.S. at 157; *see also Finstuen v. Crutcher*, 496 F.3d 1139, 1151 (10th Cir. 2007) ("[T]he state officer against whom a suit is brought must have some connection with the enforcement of the [unlawful] act.") (quotations omitted).The "necessary connection" language in *Young* has caused some confusion.  As one court has described the inquiry, the necessary connection between the state defendant and the subject of the suit is "the common denominator of two *separate* inquiries: first, whether there is the requisite causal connection between [the defendant's] responsibilities and any injury that the plaintiffs might suffer, such that relief

Here, the Oklahoma officials' generalized duty to enforce state law, alone, is insufficient to subject them to a suit challenging a constitutional amendment they have no specific duty to enforce. *See Women's Emergency Network v. Bush*, 323 F.3d 937, 949-50 (11th Cir. 2003) ("Where the enforcement of a statute is the responsibility of parties other than the governor (the cabinet in this case), the governor's general executive power is insufficient to confer jurisdiction."); *see also Waste Mgm't. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330-31 (4th Cir. 2001) (concluding governor's general duty to enforce the laws of Virginia insufficient when he lacks a specific duty to enforce the challenged statutes); *Okpalobi v. Foster*, 244 F.3d 405, 422-25 (5th Cir. 2001) (en banc) (constitutional challenge to state tort statute against Governor and Attorney General not viable under the *Ex Parte Young* doctrine because no enforcement connection existed between Governor or Attorney General and the statute in question); *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 112-13, 116 (3d Cir. 1993) ("If we were to allow [plaintiffs] to join . . . [the State officials] in this lawsuit based on their general obligation to enforce the laws . . ., we would quickly approach the nadir of the slippery slope; each state's high policy officials would be subject to defend

against the defendants would provide redress [Article III standing]; and second, whether our jurisdiction over the defendants is proper under the doctrine of *Ex parte Young* . . . . which requires some connection between a named state officer and enforcement of a challenged state law." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) (citations and quotations omitted) (emphasis added). In other words, the *Young* doctrine does not relieve a plaintiff of the obligation to name a proper defendant.

every suit challenging the constitutionality of any state statute, no matter how attenuated his or her connection to it.").

The Couples claim they desire to be married but are prevented from doing so, or they are married but the marriage is not recognized in Oklahoma. These claims are simply not connected to the duties of the Attorney General or the Governor. Marriage licenses are issued, fees collected, and the licenses recorded by the district court clerks. *See* Okla. Stat. Ann. tit. 28, § 31; Okla. Stat. Ann. tit. 43, § 5. "[A] district court clerk is 'judicial personnel' and is an arm of the court whose duties are ministerial, except for those discretionary duties provided by statute. In the performance of [a] clerk's ministerial functions, the court clerk is subject to the control of the Supreme Court and the supervisory control that it has passed down to the Administrative District Judge in the clerk's administrative district." *Spreight v. Presley*, 203 P.3d 173, 177 (Okla. 2008). Because recognition of marriages is within the administration of the judiciary, the executive branch of Oklahoma's government has no authority to issue a marriage license or record a marriage. Moreover, even if the Attorney General planned to enforce the misdemeanor penalty (a claim not made here), that enforcement would not be aimed toward the Couples as the penalty only applies to the issuer of a marriage license to a same-sex couple. Thus, the alleged injury to the Couples could not be caused by any action of the Oklahoma officials, nor would an

injection (tellingly, not requested here)[6] against them give the Couples the legal status they seek.

Because the Couples lack Article III standing, we **REVERSE** the district court's failure to dismiss the claims against the Oklahoma officials and **REMAND** the case for entry of an order dismissing these claims for lack of subject matter jurisdiction.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

[6] Here, the Couples' complaint failed to identify any action that would be taken by the Governor or the Attorney General which would affect them. They did not request the court order the Oklahoma officials to act or refrain from acting. Instead, the sole request for relief was that the Oklahoma Amendment be declared unconstitutional.