**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**October 18, 2012**

**FOR THE TENTH CIRCUIT**
_____

DIANE PETRELLA, next friend and
guardian of minor N.P., minor C.P.; NICK
PETRELLA, minor C.P., next friend and
guardian of minor N.P.; MICHELLE
TROUVE', next friend and guardian of
minor J.T., minor Z.T., minor N.T.; MARC
TROUVE', next friend and guardian of
minor Z.T., minor N.T., minor J.T.;
MEREDITH BIHUNIAK, next friend and
guardian of minor S.B., minor O.B., minor
A.B., minor E.B.; CHRIS BIHUNIAK,
next friend and guardian of minor S.B.,
minor O.B., minor A.B., minor E.B.;
MIKE WASHBURN, next friend and
guardian of minor A.W., minor R.W.;
LAURENCE FLORENS, next friend and
guardian of minor A.W., minor R.W.;
PAUL ERDNER, next friend and guardian
of minor M.E., minor A.E.; JULIE
ERDNER, next friend and guardian of
minor M.E., minor A.E.; CHRISTOPHE
SAILLY, next friend and guardian of
minor E.S., minor N.S.; CATALINA
SAILLY, next friend and guardian of
minor E.S., minor N.S.; JOHN WEBB
ROBERTS, next friend and guardian of
minor M.C.R., minor W.C.R.; TERRE
MANNE, next friend and guardian of
minor C.J.M.,; ALISON BARNES
MARTIN, next friend and guardian of
minor C.O.M., minor C.E.M.; KURT
KUHNKE, next friend and guardian of
minor A.K.; LISA KUHNKE, next friend
and guardian of minor A.K.,

Plaintiffs - Appellants,

No. 11-3098

v.

SAM BROWNBACK, Governor of Kansas, in his official capacity; DR. DIANE DEBACKER, in her official capacity as Kansas Commissioner of Education; JANET WAUGH, in her official capacity as Chair of the Kansas State Board of Education; KATHY MARTIN, in her official capacity as a member of the State Board of Education; SUE STORM, in her official capacity as a member of the Kansas State Board of Education; KENNETH WILLARD, in his official capacity as a member of the Kansas State Board of Education; JOHN W. BACON, in his official capacity as a member of the Kansas State Board of Education; DR. WALT CHAPPELL, in his official capacity as a member of the Kansas State Board of Education; CAROLYN L. WIMS-CAMPBELL, in her official capacity as a member of the Kansas State Board of Education; JANA SHAVER, in her official capacity as Vice-Chair of the Kansas State Board of Education; SALLY CAUBLE, in her official capacity as a member of the Kansas State Board of Education; DAVID T. DENNIS, in her official capacity as a member of the Kansas State Board of Education; DEREK SCHMIDT, Kansas Attorney General, in his official capacity; RON ESTES, Kansas State Treasurer, in his official capacity,

Defendants - Appellees,

and

JEFF GANNON, next friend and guardian of minor L.G., minor A.G., minor G.G.; MEREDITH GANNON, next friend and

2

guardian of minor L.G., minor A.G., minor G.G.; ANDREA BURGESS, next friend and guardian of minor J.B.; JENNIFER KENNEDY, next friend and guardian of minor O.K.; SCHELENA OAKMAN, next friend and guardian of minor C.O.; MARTHA PINT, next friend and guardian of minor C.P.; DAVID SEEBER, next friend and guardian of minor A.S., minor B.S.; MISTY SEEBER, next friend and guardian of minor A.S., minor B.S.; JOHN CAIN, next friend and guardian of minor L.C.; BECKY CAIN, next friend and guardian of minor L.C.; DARRIN COX, next friend and guardian of minor J.C.; LOIS COX, next friend and guardian of minor J.C.; DANIE ELDREDGE, next friend and guardian of minor A.E.; JOSH ELDREDGE, next friend and guardian of minor A.E.; JIM HOLMES, next friend and guardian of minor J.H.; JOY HOLMES, next friend and guardian of minor J.H.; MATT NEWTON, next friend and guardian of minor L.N.; IVY NEWTON, next friend and guardian of minor L.N.; GLENN OWEN, next friend and guardian of minor A.O.; RYAN RANK, next friend and guardian of minor M.R.; BEULAH WALKER, next friend and guardian of minor Q.W.; BIANCA ALVAREZ, next friend and guardian of minor M.A.; NORMA DEL REAL, next friend and guardian of minor P.D., minor V.D.; ADRIANA FIGUEROA, next friend and guardian of minor T.F.; EVA HERRERA, next friend and guardian of minor D.H., minor G.H., minor K.H.; REBECCA FRALICK, next friend and guardian of M.S.; CONSUELO TRETO, next friend and guardian of minor A.T.; MELISSA BYNUM, next friend and guardian of minor T.B.; EVETTE HAWTHORNE-CROSBY, next friend and guardian of

3

minor B.C.; BRYANT CROSBY, next friend and guardian of minor B.C.; GEORGE MENDEZ, next friend and guardian of minor G.M.; MONICA MENDEZ, next friend and guardian of minor G.M.; SALLY MURGUIA, next friend and guardian of minor A.M.; RAMON MURGUIA, next friend and guardian of minor A.M.; CLARA OSBORNE, next friend and guardian of minor N.W.,

Intervenor-Defendants – Appellees.

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
D.C. No. 2:10-cv-02661-JWL-KGG**

_____

Tristan L. Duncan, Shook, Hardy & Bacon, L.L.P., Kansas City, Missouri (William F. Northrip, and Zach Chaffee-McClure, Shook, Hardy & Bacon, L.L.P., Kansas City Missouri, and Jonathan S. Massey, Massey & Gail, LLP, Washington, D.C., and Laurence H. Tribe, Cambridge, Massachusetts, with her on the briefs), for Plaintiffs-Appellants.

Arthur S. Chalmers, Hite, Fanning & Honeyman L.L.P., Wichita, Kansas (Gayle B. Tibbets, Hite, Fanning & Honeyman L.L.P., Wichita, Kansas; Jeffrey A. Chanay, Deputy Attorney General, Office of Kansas Attorney General, Topeka, Kansas; Cheryl L. Whelan, General Counsel, Kansas State Department of Education, Topeka, Kansas; Mark A. Ferguson and Eldon J. Shields, Gates, Shields & Ferguson, P.A., Overland Park, Kansas, with him on the brief), for Defendants-Appellees.

Alan L. Rupe, Kutak Rock LLP, Wichita, Kansas (John S. Robb, Somers, Robb & Robb, Newton, Kansas, with him on the brief), for Intervenor-Defendants-Appellees.

_____

Before **GORSUCH**, **EBEL**, and **HOLMES**, Circuit Judges.

_____

**EBEL**, Circuit Judge

4

In this litigation, Appellants, plaintiffs below, brought an action under 42 U.S.C. § 1983, challenging the statutory scheme by which the state of Kansas funds its public schools. The district court dismissed their suit for lack of standing. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude that the Appellants have standing because their alleged injury—unequal treatment by the state—would be redressed by a favorable decision. Accordingly, we REVERSE.

## I. BACKGROUND

### A. Kansas School District Finance and Quality Performance Act

The Kansas Constitution requires the Kansas legislature to "make suitable provision for finance of the educational interests of the state." Kan. Const. art. 6, § 6. In 2005, the Kansas Supreme Court determined that the then-current school finance system (the School District Finance and Quality Performance Act, or "Act") violated the state constitution because it "failed to make suitable provisions" for funding the public schools. See Montoy v. State, 120 P.3d 306, 310 (Kan. 2005) ("Montoy I") (internal quotation marks omitted).[1] Among the Act's constitutional shortcomings were an overall underfunding of public education, and a wealth-based disparity in public education funding based on differences in assessed property values from district to district. See id.

---

[1] The Montoy litigation arose out of an earlier challenge to Kansas's school finance system, which resulted in a series of decisions from the Kansas Supreme Court starting in 2003. For purposes of this opinion, we cite only three of the Montoy decisions, which we call "Montoy I," "Montoy II," and "Montoy III." (These numbers bear no relation to the similar shorthand occasionally used within the Montoy opinions themselves.)

5

At the same time, the Kansas Supreme Court upheld the Act against an equal protection challenge, finding that the Act did not violate either the Kansas or United States constitutions on equal protection grounds. See id. at 308.

A few months after Montoy I, the Kansas Legislature passed new legislation that purported to address the Act's constitutional shortcomings. The Kansas Supreme Court considered the adequacy of that new legislation in Montoy v. State, 112 P.3d 923 (Kan. 2005) ("Montoy II"). As pertinent to this appeal, the Montoy II court concluded that the new legislation was still inadequate under the Kansas Constitution, both because it still failed to provide enough funding overall, and because its revisions to how local property taxes would be levied and distributed "exacerbate[d] disparities based on district wealth." Montoy II, 112 P.3d at 937.

After Montoy II, the Kansas Legislature again amended the Act. This latest iteration of the Act, Kan. Stat. Ann. § 72-6405 et seq., is the subject of the present litigation. The Kansas Supreme Court deemed the current version of the Act sufficient to bring the system into "substantial compliance" with its prior orders. See Montoy v. State, 138 P.3d 755, 765 (Kan. 2006) ("Montoy III").

The Act attempts to ensure equal per-pupil funding across all school districts according to a complex formula. The formula establishes a "Base State Aid Per Pupil" figure, see Kan. Stat. Ann. § 72-6410(b)(1), which is then multiplied by a given district's adjusted enrollment to determine the "State Financial Aid," i.e., the minimum funding that district will receive from the state. See id. § 72-6410(a). Adjustments to a district's actual enrollment numbers are made according to a series of weighting factors, which

6

take into account such things as the number of bilingual or special education students in a given district; the number and percentage of "at-risk" students in the district; whether the district has unusually high or low enrollment; the transportation needs of the district; and whether a district is operating a new facility. See id. §§ 72-6411–72-6415b, 72-6442b. Thus, for example, a district with high numbers of at-risk students, or high numbers of students requiring bus transportation, will have its actual enrollment adjusted upwards, to help it meet the costs associated with those factors.

The Act requires each school district to levy an ad valorem property tax of 20 mills for school finance purposes. Kan. Stat. Ann. § 72-6431. The amount of money raised through this local tax is designated the district's "Local Effort." Id. § 72-6410(c). If a district's Local Effort generates less than the level of State Financial Aid to which the district is entitled under the formula above, the State makes up the difference with "General State Aid." Id. § 72-6416(b). If on the other hand, a district's Local Effort equals or exceeds the level of State Financial Aid to which it is entitled, the district receives no General State Aid. Id. Any Local Effort in excess of the State Financial Aid target is remitted to the state and used to cover General State Aid distributions to other districts. Id. § 72-6431(c), (d).

The Act also authorizes districts to adopt a "Local Option Budget" ("LOB"), which permits a district to raise extra money by levying additional property taxes beyond the 20 mill minimum. Id. § 72-6433(b). The LOB is capped, however, at 31% of the district's State Financial Aid entitlement. Id. Districts that utilize a LOB are further entitled to "Supplemental General State Aid" based on where the district ranks in terms

7

of assessed property value.  Id. § 72-6434.  Low-ranking districts receive more Supplemental General State Aid than higher-ranking districts, and the highest-ranking districts receive no Supplemental General State Aid at all.  Id.

The LOB cap, in some form, has been part of the scheme since the Act was initially enacted in 1992.  Initially the cap was 25%.  Kan. Sess. Laws 1992, ch. 280, § 29.  In 2005 and 2006, responding to the Kansas Supreme Court's orders in the Montoy litigation, the legislature increased the cap.  Kan. Sess. Laws 2005, ch. 194, § 17; Kan. Sess. Laws 2006, ch. 197, § 19.  In holding the Legislature's first corrective attempt at a funding scheme was still inadequate, the state high court noted that "the legislation's increase in the LOB cap exacerbates the wealth-based disparities between districts." Montoy II, 112 P.3d at 934.

## B.    Procedural Background

Appellants are students, and parents of students, in the Shawnee Mission Unified School District ("SMSD").  They filed this action under 42 U.S.C. § 1983 in the District of Kansas in December 2010, claiming that the LOB cap violated their federal Equal Protection and Due Process rights, as guaranteed by the Fourteenth Amendment to the United States Constitution.  Appellants named as Defendants, Appellees here, various state officials, including the Governor, the Attorney General, the Treasurer, the Commissioner of Education, and the Chair and members of the State Board of Education ("Appellees").

According to Appellants' complaint below, the LOB cap has caused SMSD to reduce its budget and reduce the educational services it provides. SMSD has cut its budget by $20 million over a two-year span, including cutting nearly 100 teachers, and class sizes have increased. The LOB cap has also caused SMSD to announce and begin implementing the closure of certain schools in the district.

Appellants asserted a fundamental liberty interest in directing and participating in the upbringing and education of their children; a fundamental property interest in spending their own money to improve public education in their district, thereby protecting their property values; and a First Amendment right to assemble, associate, and petition for improved public education through increased local taxation. Appellants sought various forms of relief, including a preliminary and permanent injunction against the enforcement of the LOB cap, a declaratory judgment that the LOB cap violated the Fourteenth Amendment; a preliminary and permanent injunction against the implementation of the planned SMSD school closures, and "such other and further relief" as the court might find just and proper.

On Appellees' motion, the district court dismissed the case for lack of standing. The district court concluded that because the LOB cap was not severable from the rest of the Act, a finding that the LOB cap was unconstitutional would result in the invalidation of the entire Act. Further, because the district court concluded that Kansas law provided no independent taxing authority for school boards, a favorable decision for the plaintiffs would result in the SMSD school board being unable to levy any taxes at all. The court held that, while under other circumstances the "cap can be challenged," in this case, "[i]t

9

is only plaintiffs' desired <u>remedy</u>—striking only the cap, so that the school district retains the right to impose an LOB tax—that does not work." Dist. Ct. op. at 13 (emphasis added). In other words, the district court held, a favorable decision would not redress the plaintiffs' alleged injury, because it would deprive the SMSD of any funding at all, and that was not a result that the plaintiffs were seeking. This appeal followed.

## II.  JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction over this federal constitutional claim under 28 U.S.C. § 1331. We have jurisdiction to review the district court's final judgment, which Appellants timely appealed, under 28 U.S.C. § 1291. Though the district court ultimately determined it lacked subject-matter jurisdiction, "a federal court always has jurisdiction to determine its own jurisdiction." <u>United States v. Ruiz</u>, 536 U.S. 622, 627 (2002); <u>see also</u> <u>Latu v. Ashcroft</u>, 375 F.3d 1012, 1017 (10th Cir. 2004) (noting "inherent jurisdiction of Article III federal courts to determine their jurisdiction").

This Court reviews a dismissal for lack of standing "de novo, applying the same standard used by the district court." <u>Citizens for Responsible Gov't State Political Action Comm. v. Davidson</u>, 236 F.3d 1174, 1189 (10th Cir. 2000) (internal quotation marks omitted). Appellants, as the party seeking to invoke federal jurisdiction, bear the burden of establishing standing. <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992); <u>Nova Health Sys. v. Gandy</u>, 416 F.3d 1149, 1154 (10th Cir. 2005).

## III.  DISCUSSION

10

We pause to emphasize two points. First, whether Appellants ultimately can prove that the state in fact "intentionally underfunds" the Appellants' district, or that the Act in fact creates classifications without sufficient justification, is beyond the scope of this appeal. Here we address only the district court's conclusion that Appellants lacked standing to challenge the LOB cap because their alleged injuries were not redressable. We do not address the district court's conclusions that the LOB cap was not severable from the remainder of the Act, nor the conclusion that Kansas school districts lack independent taxing authority. As to these latter two points, we believe the district court's conclusions are premature and we vacate those conclusions for further consideration if necessary. Second, the dismissal for lack of standing came at the pleading stage, not on a motion for summary judgment or later in the litigation. Consequently, Appellants' burden in establishing standing is lightened considerably. See Coll v. First Am. Title Ins. Co., 642 F.3d 876, 892 (10th Cir. 2011) ("In addressing standing at the motion-to-dismiss stage of these proceedings, we must accept as true all material allegations of the complaint, and must construe the complaint in favor of the [Plaintiffs, as] complaining part[ies]." (alterations in original, internal quotation marks omitted) (citing Initiative and Referendum Inst. v. Walker, 450 F.3d 1082, 1089 (10th Cir. 2006) (en banc)); see also Lujan, 504 U.S. at 561 ("[O]n a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal quotation marks omitted).

A.    Standing

11

We disagree that Appellants' alleged injuries could not be redressed by a favorable decision on the merits. Accordingly, we hold that Appellants have standing.

The federal judicial power extends only to "cases" and "controversies." U.S. Const. Art. III. For a case or controversy to be justiciable, it must involve "questions presented in an adversary context and . . . capable of resolution through the judicial process." Massachusetts v. E.P.A., 549 U.S 497, 516 (2007). The three requirements of Article III standing—injury-in-fact, causation, and redressability—ensure that the parties to any litigation have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." Id. at 517. It is the plaintiff's burden to demonstrate that these requirements are met. See Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). Each of these requirements "must be established before a federal court can review the merits of a case." Consumer Data Indus. Assoc. v. King, 678 F.3d 898, 902 (10th Cir. 2012).

## 1. Injury

The injury alleged must be "concrete and particularized," and the threat of that injury must be "actual and imminent, not conjectural or hypothetical." Summers, 555 U.S. at 493. Here, Appellants alleged that that their school district is being "intentionally underfund[ed]," and that they receive less funding per pupil, in violation of their equal protection rights. Aplt. App. at 45 (Complaint at ¶ 6). They alleged that their First Amendment rights of association and expression are implicated by the LOB cap, which prohibits them from taking political action to attempt to raise additional tax revenues for

12

their school district, and that this violates their due process rights.  Appellants alleged further that the LOB cap caused increases in class size, the closure of three schools in the district, and the planned closure of a fourth.  All of these allegations, taken as true, as they must be at the motion to dismiss stage, suffice to state an injury-in-fact for purposes of Article III standing.  See Lujan, 504 U.S. at 561 (at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice"); United States v. Colo. Supreme Ct., 87 F.3d 1161, 1165 (10th Cir. 1996); see also In re Special Grand Jury 89-2, 450 F.3d 1159, 1173 (10th Cir. 2006) ("[A]n infringement on Appellants' interest in [exercising First Amendment rights] can constitute the requisite injury in fact for Article III standing even though they are raising no First Amendment claim.").

### 2. Causation

The causation prong of Article III standing requires that the injury be "fairly traceable to the challenged action of the defendant."  Lujan, 504 U.S. at 560 (internal alterations omitted).  As pled, the LOB cap is the source of Appellants' alleged injury.  But for the LOB cap, Appellants claim, the school district could submit a proposed property tax increase to the voters.  This is sufficient to meet the causation requirement.  See Duke Power Co. v. Carolina Envt'l Study Grp., Inc., 438 U.S. 59, 74-78 (1978) (causation requirement satisfied in declaratory judgment action where challenged statute was "but for" cause of plaintiffs' alleged injuries); Dias v. City & Cnty. of Denver, 567 F.3d. 1169, 1178 (10th Cir. 2009) (at motion to dismiss stage, in action against city, county, mayor, and other city officials, plaintiffs' allegations that challenged ordinance was "but for" cause of injuries sufficed to meet causation requirement).

13

Appellees contend that causation is not met because Appellants cannot identify any specific action on Appellees' part that has caused them harm. The Court rejects this argument. It cannot seriously be disputed that the proper vehicle for challenging the constitutionality of a state statute, where only prospective, non-monetary relief is sought, is an action against the state officials responsible for the enforcement of that statute. See Ex parte Young, 209 U.S. 123, 161 (1908). Nor can it be disputed that the Governor and Attorney General of the state of Kansas have responsibility for the enforcement of the laws of the state. See Kan. Const. Art. I § 3; Kan. Stat. Ann. § 75-702. And this Court has already held, in another challenge to Kansas's school finance scheme, that the state school board officials and Commissioner of Education are proper defendants in such a suit. See Robinson v. Kansas, 295 F.3d 1183, 1191 (10th Cir. 2002), abrogated on other grounds by Muscogee (Creek) Nation v. Pruitt, 669 F.3d 1159 (10th Cir. 2012).

### 3. Redressability

Even where injury and causation are sufficiently established, Article III standing will be denied unless it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 561 (internal quotation marks omitted). The district court's conclusion that Appellants' alleged injury was not redressable was based on an inaccurate characterization of that injury. The injury Appellants claim to suffer is not "the inability of the district to raise unlimited funds through a local tax," Dist. Ct. op. at 1, but the deprivation of equal protection, suffered personally by Appellants, by virtue of the alleged "intentional underfunding" of their

14

school district, coupled with the LOB cap's statutory prohibition on even attempting to raise more money to compensate for this alleged underfunding.

It is this alleged unequal treatment that constitutes the injury. See Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 211 (1995); NE Fla. Chap., Assoc. Gen. Contractors of Am. v. Jacksonville, 508 U.S. 656, 667 (1993). Unequal treatment may be redressed either by extending the sought-after benefit to the disfavored class, or by withdrawing the benefit from the favored class. See Davis v. Mich. Dept. of Treas., 489 U.S. 803, 817-18 (1989); Heckler v. Mathews, 465 U.S. 728, 740 (1984); see also Iowa-Des Moines Nat. Bank v. Bennett, 284 U.S. 239, 247 (1931). There was no requirement that Appellants in this case show that they would actually have raised more money if the cap were struck down. See Adarand, 515 U.S. at 211 ("The aggrieved party need not allege that he would have obtained the benefit but for the barrier in order to establish standing.") (internal quotation marks omitted); Regents of Univ. of Cal. v. Bakke, 438 U.S. 265, 280 n.14 (1978) ("[E]ven if Bakke had been unable to prove that he would have been admitted [to medical school] in the absence of the [challenged] special program, it would not follow that he lacked standing.").

Instead, a favorable decision on the merits could redress the Appellants' alleged injuries. Without prejudging the merits, Appellants could get meaningful relief under a variety of scenarios. Most preferable to Appellants would be an invalidation of the LOB cap coupled with a finding that the cap is severable. See Local 514 Transp. Workers Union of Am. v. Keating, 358 F.3d 743, 750 (10th Cir. 2004) (finding standing where plaintiff's alleged injury was caused by the challenged statute, and characterizing the

15

"favorable decision" as including both the merits answer and the severability answer). However, Appellants could also get relief through an injunction against the Act as a whole, because it would redress Appellants' alleged injury of discriminatory treatment. Or the district court could strike down the LOB cap and the Act, but stay its order to give the Kansas Legislature time to respond. In summary, injunctive or declaratory relief as to the LOB cap alone would, on the facts alleged, redress the injury by extending to Appellants the benefit they claim to be deprived of, and injunctive or declaratory relief as to the Act as a whole would also redress the injury of constitutionally unequal treatment by withdrawing from all school districts the alleged discriminatory benefit. See Davis, 489 U.S. at 817-18; Heckler, 465 U.S. at 740; Jacobs v. Barr, 959 F.2d 313, 317 (D.C. Cir. 1992) ("In this case, a court could order the benefits . . . to be extended to [the plaintiff], or it could declare the statute a nullity. . . . In either case, the equal protection violation would be redressed."). This is sufficient, at this early stage of the litigation, to establish Appellants' standing. Indeed, the district court acknowledged that the invalidation of "the entire funding scheme" would be "an effective result if in fact the cap is unconstitutional." Dist. Ct. op. at 13.

The district court reasoned, however, that because Appellants' "desired remedy" was the excision of the LOB cap alone, and such excision was impossible, Appellants' alleged injury would not be redressed. Id. But as we have made clear, Appellants' alleged injury, while flowing from the LOB cap, was not "the inability of the district to raise unlimited funds," Dist. Ct. op. at 1, but rather the alleged unequal treatment (manifested in, among other things, lower per-pupil funding) that prevented them from

16

even attempting to level the playing field. That Appellants would have preferred to see the LOB cap alone invalidated does not render that injury incapable of redress. Appellants' Complaint is titled "Complaint for Declaratory, Injunctive, or Other Relief." Aplt. App. at 43. Appellants expressly sought not only declaratory and injunctive relief against the enforcement of the LOB cap, but also "such other and further relief as [the district] Court should find just and proper." Id. at 61. Equitable relief can take many forms, and at this early stage of the proceeding the court should not assume it will be unable to fashion relief that could remedy any constitutional violation found. Although Appellants repeatedly stressed that they did not seek the invalidation of the entire scheme, only invalidation of the LOB cap, Appellants clearly contemplated the possibility that the entire scheme might be struck. See Aplt. App. at 2233 (Plaintiffs' Supplemental Memorandum Addressing Severability); 2317-18 (transcript of hearing on motion for preliminary injunction). They did not expressly disavow that possibility, nor did they ever concede that the wholesale invalidation of the Act would mean that their injury could not be redressed.

The standing inquiry, at the motion to dismiss stage, asks only whether the plaintiff has sufficiently alleged a cognizable injury, fairly traceable to the challenged conduct that is likely to be redressed by a favorable judicial decision. See Lujan, 504 U.S. at 560-61. In some cases, it may well be that only one remedy will alleviate the injury, such that the unavailability of that remedy, or at least the inability of the court to provide it, means the injury cannot be redressed, and the plaintiff lacks standing. See, e.g., id. at 570-71 (remedy of forcing federal agencies to consult with Secretary of the

17

Interior could not be provided by court when federal agencies were not parties; thus, among other reasons, plaintiffs lacked standing); Turner v. McGee, 681 F.3d 1215, 1218-19 (10th Cir. 2012) (no standing where plaintiff failed to establish that federal court had power to enjoin tribal court, and that tribal court in turn had power to affect challenged state-court conviction). But as we have just discussed, a court sustaining an equal protection challenge has "two remedial alternatives: it may either declare the statute a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion." Heckler, 465 U.S. at 738 (internal quotation marks and alterations omitted); see Cunico v. Pueblo Sch. Dist. No. 60, 917 F.2d 431, 442 (10th Cir. 1990) ("[T]he command of equal protection is observed either when the State terminates its preferential treatment of the person who benefits from the discrimination or when it extends such treatment to the person aggrieved.").

We conclude that Appellants have carried their burden to establish the three requirements of Article III standing.

## B. Severability and independent taxing authority

As the foregoing discussion of standing makes clear, Appellants' Article III standing does not depend upon their certain ability to raise funding from within the district. Instead, Appellants have standing because, under the lenient standard applicable at this early stage of the litigation, they have alleged a violation of their right to equal protection that is fairly traceable to the challenged statute, and which would be redressed by a favorable decision on the merits, even if such a decision resulted in the wholesale

invalidation of the Act. Standing is established, in other words, regardless of whether the LOB cap is severable from the remainder of the Act.

Therefore, the district court did not need to determine, at this early stage, whether the challenged LOB cap can be severed from the Act, or whether, if not, other Kansas statutes confer taxing authority on individual school districts. Accordingly, we do not reach those questions, and we VACATE those portions of the district court's order. Only if, on remand, the district court concludes that the LOB cap is unconstitutional, should it then determine whether the cap is severable under Kansas law, applying Kansas's test for severability as articulated, for example, in Thompson v. KFB Insurance Co., 850 P.2d 773, 782 (Kan. 1993). See Davidson, 236 F.3d at 1195 ("In order to determine whether partial invalidation of a state statute is appropriate, federal courts look to state law.").

## IV.   CONCLUSION

For the foregoing reasons, we hold that Appellants have standing to challenge the constitutionality of the LOB cap, regardless of whether the cap is severable from the rest of the Act. The district court's dismissal for lack of standing is REVERSED, and its conclusions as to severability and independent taxing authority are VACATED. The case is REMANDED to the district court for a consideration of the merits.

19