In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1668

JOSEPH OCOL, on behalf of himself
and all others similarly situated,

*Plaintiff-Appellant*,

*v.*

CHICAGO TEACHERS UNION, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 CV 8038 — **Harry D. Leinenweber**, *Judge*.

SUBMITTED[1] SEPTEMBER 29, 2020 — DECIDED DECEMBER 9, 2020

Before ROVNER, SCUDDER, and ST. EVE, *Circuit Judges*.

ROVNER, *Circuit Judge*. In *Janus v. AFSCME, Council 31*, 138
S. Ct. 2448 (2018)(*Janus I*), the Supreme Court reversed course

---

[1] This court granted the parties` joint motion to waive oral argument. The
case is therefore submitted on the briefs.

on 41 years of jurisprudence sanctioning agreements between state-government agencies and unions authorizing the unions to collect fair-share fees from non-union members to cover costs incurred representing them. Joseph Ocol, a math teacher in the Chicago public school system, then filed this putative class action lawsuit under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 against the Chicago Teachers Union and the American Federation of Teachers ("Union defendants") as well as the Attorney General of Illinois and the chair and members of the Illinois Educational Labor Relations Board ("state defendants"). As relevant here, he sought recovery of payments he had previously made under protest to the Chicago Teachers Union and also challenged the constitutionality of the exclusive representation provisions of Illinois law as they applied to non-union members. Ultimately the district court dismissed or granted summary judgment to all defendants, and Ocol appeals. As Ocol admits, however, his claims are barred by existing precedent, and we therefore affirm.

## I.

Ocol is a math teacher at Earle STEM Elementary School and was a member of the Chicago Teachers Union from 2005 through 2016. According to his complaint, in September 2016 he was expelled from the Union after refusing to participate in a one-day strike on April 1, 2016. He did, however, remain obligated to pay so-called "fair-share fees" to the Union under the portion of the Illinois Educational Labor Relations Act, 115 ILCS 5/1-5/21, authorizing unions and public employers to include in their collective bargaining agreements a fair share clause "requiring employees covered by the agreement who

are not members of the organization to pay the organization a fair share fee for services rendered." *Id.* § 5/11.

Ocol continued paying the required fair-share fees until 2018, when the Supreme Court in *Janus I* overruled *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), and concluded that extraction of such fees from non-union members violated those employees' First Amendment rights, *see Janus I* 138 S. Ct. at 2478. The district court then dismissed the state defendants on their motion. The Union defendants moved for summary judgment, but the parties agreed to stay consideration of the motion until after our court resolved *Janus I* on remand. In that appeal, we considered and rejected Mark Janus's argument that he was entitled to a refund for some or all of the fair-share fees he had paid under protest. *Janus v. AFSCME, Council 31*, 942 F.3d 352 (7th Cir. 2019)("*Janus II*"); *see also Mooney v. Ill. Educ. Ass'n*, 942 F.3d 368 (7th Cir. 2019) (rejecting plaintiff's assertion that she was entitled to the equitable remedy of restitution of past fair-share fees). Ocol then conceded defeat on his Section 1983 claim for a refund of his fair-share payments as well as his First Amendment challenge to exclusive representation. The district court thus granted the Union defendants` motion for summary judgment.[2]

---

[2] In addition to his constitutional claims, Ocol sought repayment of his fair-share fees under a state-law tort of conversion claim. He also mounted an antitrust challenge to the Union's collective bargaining agreements, arguing that the alleged anti-competitive effects of designating the Union as the exclusive representative of both members and non-members alike amounted to a violation of the Sherman Act. The district court rejected both of these claims, noting that the tort law claim was pre-empted by the Illinois

(continued...)

## II.

On appeal, Ocol renews his constitutional challenges to his past payment of fair-share fees to the Chicago Teachers Union and to its designation as exclusive representative of both union and non-union members alike under Illinois law. He admits, however, that both claims are squarely foreclosed by precedent and requests that we summarily affirm judgment in the defendants' favor so that Ocol may appeal to the Supreme Court.

As Ocol recognizes, our holding in *Janus II*, 942 F.3d at 367, precludes his argument that he is entitled to a refund of his past compulsory fair-share payments. The plaintiff in *Janus I*, who, like Ocol, had paid fair-share fees under protest to a union designated as the representative of his employee unit (the Illinois Department of Healthcare and Family Services), sought recovery of his past payments. We held that a private party acting under color of state law for § 1983 purposes was entitled to a good-faith defense, which applied to the union's collection of fair-share fees before the Supreme Court's decision. *Janus II*, 942 F.3d at 364–65. We thus concluded that Janus was limited to "declaratory and injunctive relief, and a future free of any association with a public union." *Janus II*, 942

---

[2] (...continued)
Educational Labor Relations Act, 115 ILCS 5/1-5/21, and that the antitrust claim fared no better: the principle of exclusive representation has longstanding judicial acceptance and in any event the state action exception to the Sherman Act would surely apply in light of the designation by the Illinois legislature of exclusive bargaining as the authorized system governing labor relations for Illinois public employees. Ocol is not pursuing either of these claims on appeal.

F.3d at 367. As Ocol admits, the exact same rationale applies to bar his claim for repayment of past fair-share fees from the Chicago Teachers Union.

Likewise, Ocol's constitutional challenge to the Union's exclusive representation goes nowhere. The Illinois Educational Labor Relations Act, 115 ILCS 5/1-5/21, governs labor relations between public educational employers and employees through a system of exclusive representation allowing the representative union to negotiate employment conditions, resolve disputes, and select employee representatives pursuant to collective bargaining agreements. Ocol argues that the Act's exclusive representation provisions violate the First Amendment by restricting his right to bargain as an individual for the terms and conditions of his employment. Here again, as Ocol himself acknowledges, precedent forecloses his claim. Specifically, in *Minnesota State Board for Community Colleges v. Knight*, the Supreme Court rejected a First Amendment challenge to a similar exclusive representation provision applicable to state colleges in Minnesota, 465 U.S. 271 (1984) (upholding a provision of Minnesota Public Employment Labor Relations Act that precluded non-designated faculty representatives from bargaining directly with college employers). And more recently in *Janus I*, the Court gave no indication that its ruling on fair-share fees necessarily undermined the system of exclusive representation. *See Janus I*, 138 S. Ct. at 2467 (noting that union's duty of fair representation to both members and nonmembers continues despite elimination of fair-share fees because benefits of exclusive representation "greatly outweigh any extra burden imposed by the duty of providing fair representation for nonmembers"). As Ocol recognizes,

*Knight* and its progeny firmly establish the constitutionality of exclusive representation, and the Supreme Court is the proper forum for challenging that rule. We thus grant his request for summary affirmance so that he may seek a petition for certiorari to pursue his arguments there.

### III.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.