FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 26, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BRETT HENDRICKSON,

    Plaintiff - Appellant,

v.

AFSCME COUNCIL 18; MICHELLE
LUJAN GRISHAM, in her official
capacity as Governor of New Mexico;
HECTOR BALDERAS, in his official
capacity as Attorney General of New
Mexico,

    Defendants - Appellees.

------------------------------

NATIONAL RIGHT TO WORK LEGAL
DEFENSE FOUNDATION, INC.,

    Amicus Curiae.

No. 20-2018

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:18-CV-01119-RB-LF)**
_____

Brian K. Kelsey (Reilly Stephens, with him on the briefs), Liberty Justice Center,
Chicago, Illinois, for the Plaintiff - Appellant.

Eileen B. Goldsmith, Altshuler Berzon LLP, San Francisco, California (Scott A.
Kronland, and Stefanie L. Wilson, Altshuler Berzon LLP, San Francisco, California;
Shane C. Youtz, and Stephen Curtice, Youtz & Valdez, P.C., with her on the brief),
Albuquerque, New Mexico, for the Defendant - Appellee AFSCME Council 18.

Lawrence M. Marcus (Alfred A. Park, with him on the brief), Park & Associates, L.L.C., Albuquerque, New Mexico, for the Defendants – Appellees Michelle Lujan Grisham and Hector Balderas.

Raymond J. LaJeunesse, Jr., National Right to Work Legal Defense Foundation, Inc., Springfield, Virginia, filed an amicus brief in support of Defendants – Appellees.

_____

Before **MATHESON**, Circuit Judge, **LUCERO**, Senior Circuit Judge, and **McHUGH**, Circuit Judge.

_____

**MATHESON**, Circuit Judge.

_____

Brett Hendrickson worked for the New Mexico Human Services Department ("HSD") and was a dues-paying member of the American Federation of State County and Municipal Employees Council 18 ("AFSCME" or "Union"). He resigned his membership in 2018 after the Supreme Court decided *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018).

In *Janus*, the Court said the First Amendment right against compelled speech protects non-members of public sector unions from having to pay "agency" or "fair share" fees—fees that compensate the union for collective bargaining but not for partisan activity. Mr. Hendrickson contends that, under *Janus*, the Union cannot (1) retain dues that had been deducted from his paycheck, or (2) serve as his exclusive bargaining representative. The district court dismissed these claims.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm these dismissals but remand for amendment of the judgment.

2

# I. BACKGROUND

## A. *Factual Background*[1]

Mr. Hendrickson signed membership agreements that permitted union dues to be deducted from his paycheck. After *Janus*, he terminated his membership. His dues deductions stopped shortly thereafter.

### 1. Union Membership and Dues-Deduction Authorizations

This timeline lists Mr. Hendrickson's actions regarding union membership and dues-deduction authorizations:

- 2001 - Began working for the HSD. HSD employees are part of the bargaining unit represented by the Union.

- 2004 - Signed an agreement to join the Union and authorized the deduction of union dues from his paycheck.

- 2006 - Took a position outside the bargaining unit. As a result, his union membership and dues payments ended.

- 2007 - Returned to the bargaining unit. He signed another membership agreement and dues-deduction authorization.

- 2017 - Signed a membership agreement and dues-deduction authorization for the third time.

---

[1] The facts come largely from the Union's statement of undisputed facts in support of its motion for summary judgment. The district court noted that "Mr. Hendrickson fail[ed] to respond to or specifically dispute the material facts" provided by the Union, despite local rules setting such a requirement. *See* App. at 51. But as "Mr. Hendrickson's material facts [in his motion for summary judgment] [we]re largely consistent with the Union's," the district court "accept[ed] as true the facts as presented in the Union's" motion for summary judgment. *See id.* at 51-52.

## 2. Dues-Deduction Authorization - 2017

The 2017 member agreement stated:

> Effective 4/7/17, I authorize AFSCME Council 18 as my exclusive bargaining representative, and I accept membership in AFSCME Council 18. I request and authorize the State of New Mexico to deduct union dues from my pay and transmit them to AFSCME Council 18. The amount of dues deduction shall be the amount approved by AFSCME's membership as set forth in the AFSCME constitution and certified in writing to my employer.

Suppl. App. at 18-19, 50.[2]

The agreement also created an "opt-out window." It limited the time period during which Mr. Hendrickson could terminate his dues deductions:

> This authorization shall be revocable only during the first two weeks of every December, or such other time as provided in the applicable collective-bargaining agreement.

*Id.* at 19, 50.

## 3. Membership and Dues-Deduction Termination - 2018

On June 27, 2018, the Supreme Court decided *Janus*. On August 9, Mr. Hendrickson emailed the State Personnel Office ("SPO"), asking, "Are we able to withdraw as full members now or do we have to wait for a certain amount of time?" *Id.* at 110; *see also id.* at 20.[3] The SPO responded that "to cease payroll deductions for

---

[2] The 2004 and 2007 agreements contained materially similar terms.

[3] Mr. Hendrickson began his message by stating: "I seemed to have lost your response regarding full union members." Suppl. App. at 110. The record does not contain any such earlier correspondence.

Membership dues, you must refer to the [collective bargaining agreement] regarding the request to cease payroll deductions." *Id*. at 110; *see also id.* at 20.[4]

On November 30, Mr. Hendrickson filed this suit. On December 6, the Union wrote to Mr. Hendrickson:

> It has come to our attention through the filing of a lawsuit that you wish to resign your union membership and cancel your authorization for the deduction of membership dues. We have no prior record that you made any such request to the union. Nevertheless, we have processed your resignation from membership. Additionally, your dues authorization provides that it is revocable during the first two weeks of December each year. Accordingly, we are notifying your employer to stop further membership dues deductions.

*Id.* at 20-21, 58.

On December 8, the Union received a faxed letter from Mr. Hendrickson stating he would like to "opt out of being a member." *Id.* at 61; *see also id.* at 21.

4. **Refund - 2019**

Despite this correspondence, dues continued to be deducted from Mr. Hendrickson's paycheck. On January 7, 2019, he emailed the SPO to request the deductions be stopped, attaching the Union's December 6 letter. The SPO responded that because it had not received his request during the opt-out window in the first two weeks of December, it would not stop deductions. Mr. Hendrickson then sent a request to the HSD to cease dues deductions.

---

[4] The collective bargaining agreement here did not create a different opt-out window.

On January 9, the SPO notified the Union that it had no record of Mr. Hendrickson's requesting termination of his dues deductions during the opt-out window. The Union responded, "requesting that [the SPO] cease dues deductions for Hendrickson immediately." *Id.* at 68; *see also id.* at 22.

Mr. Hendrickson's deductions stopped starting "with the second pay period in January." *See id.* at 22. In February, the Union refunded Mr. Hendrickson the dues deducted from his paychecks following the closure of the 2018 cancellation window.[5]

## B. *Procedural Background*

In addition to suing the Union, Mr. Hendrickson also named as defendants, in their official capacities, New Mexico Governor Michelle Lujan Grisham and New Mexico Attorney General Hector Balderas (the "New Mexico Defendants").

On March 15, 2019, Mr. Hendrickson filed a First Amended Complaint. He alleged two counts:

- "By refusing to allow [him] to withdraw from the Union and continuing to deduct his dues, Defendants violated his First Amendment rights to free speech and freedom of association" (Count 1); and

- "The state law forcing [him] to continue to associate with the Union without his affirmative consent violates [his] First Amendment rights to free speech and freedom of association and 42 U.S.C. § 1983" (Count 2).

Suppl. App. at 8, 11 (emphasis omitted).

---

[5] The refund covered a total of $33.96 in dues deducted from his paycheck for the second December pay period and the first January pay period.

6

On Count 1, Mr. Hendrickson sought a declaration stating that "the Union and [the Governor] cannot force public employees to wait for an opt-out window to resign their union membership and to stop the deduction of dues from their paychecks." *Id.* at 10. He also sought a declaration that the New Mexico statute authorizing deductions and allowing an opt-out window "constitutes an unconstitutional violation of his First Amendment rights to free speech and freedom of association." *See id.*[6] He further sought "damages in the amount of all dues deducted and remitted to the Union since he became a member [in 2004]," *id.*, or in the alternative, "since the *Janus* ruling [in 2018]," *id.* at 11.[7]

---

[6] The statute at issue, then N.M. Stat. § 10-7E-17(C) (2003), stated in part:

> The public employer shall honor payroll deductions [of membership dues] until the authorization is revoked in writing by the public employee in accordance with the negotiated agreement and for so long as the labor organization is certified as the exclusive representative.

N.M. Stat. § 10-7E-17(C) (2003). Since Mr. Hendrickson filed suit, this provision has been updated and relocated. *See* N.M. Stat. § 10-7E-17(D). The updated version does not change our analysis.

[7] Mr. Hendrickson also sought a declaration that the New Mexico statute permitting fair share fees was unconstitutional. The district court found this request moot given "that the Union and SPO are no longer deducting fair share fees from nonunion employees." *See* App. at 55-56. Mr. Hendrickson's briefs before us do not contest this ruling.

7

On Count 2, Mr. Hendrickson sought a declaration that the New Mexico statute providing for exclusive representation "constitute[s] an unconstitutional violation of his First Amendment rights to free speech and freedom of association." *See id.* at 12.[8]

The Union and Mr. Hendrickson each filed motions for summary judgment. The New Mexico Defendants filed a motion to dismiss.

The district court granted the Union's motion for summary judgment and the New Mexico Defendants' motion to dismiss. It denied Mr. Hendrickson's motion for summary judgment. The court dismissed the suit in its entirety. Mr. Hendrickson appeals.

## II. DISCUSSION

We affirm the district court's dismissal of Count 1 because Mr. Hendrickson's request for prospective relief is moot, and his request for retrospective damages relief

---

[8] The statute at issue is N.M. Stat. § 10-7E-15(A). It states, in relevant part:

> A labor organization that has been certified by the board or local board as representing the public employees in the appropriate bargaining unit shall be the exclusive representative of all public employees in the appropriate bargaining unit. The exclusive representative shall act for all public employees in the appropriate bargaining unit and negotiate a collective bargaining agreement covering all public employees in the appropriate bargaining unit. The exclusive representative shall represent the interests of all public employees in the appropriate bargaining unit without discrimination or regard to membership in the labor organization.

N.M. Stat. § 10-7E-15(A).

fails on the merits. We affirm the district court's dismissal of Count 2 because the Eleventh Amendment bars his claim against the New Mexico Defendants, and the claim against the Union fails on the merits.

"We review de novo the district court's Rule 12(b)(6) dismissal." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1118 (10th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"We review a district court's grant of summary judgment de novo, applying the same standard as the district court." *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In conducting the analysis, we view all facts and evidence in the light most favorable to the party opposing summary judgment." *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012) (alterations and quotation omitted).

## A. *Count 1 – Union Dues*

Mr. Hendrickson objects to the deduction of union dues from his paycheck. We address below his requests for prospective and retrospective relief.

9

1. **Prospective Relief**

Mr. Hendrickson's request for prospective relief declaring that the opt-out window in the membership agreement violates the First Amendment is moot.

a. *Mootness*

"We have no subject-matter jurisdiction if a case is moot." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). Mootness is "standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Brown v. Buhman*, 822 F.3d 1151, 1164 (10th Cir. 2016) (quotation omitted).

An action becomes moot "[i]f an intervening circumstance deprives the plaintiff of a personal stake . . . at any point." *Id.* at 1165 (quotation omitted). An action is not moot if a plaintiff has "a concrete interest, however small, in the outcome." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307-08 (2012) (quotation omitted). "The crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Brown*, 822 F.3d at 1165-66 (quotation omitted).

A court must decide mootness as to "each form of relief sought." *See Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019) (quotation omitted). A request for declaratory relief is moot when it fails to "seek[] more than a retrospective opinion that [the plaintiff] was wrongly harmed by the defendant," *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011), and thus does not "settl[e] . . . some dispute which affects the

behavior of the defendant toward the plaintiff," *Rio Grande Silvery Minnow*, 601 F.3d at 1110 (quotation omitted).

b. *Analysis*

When Mr. Hendrickson filed his initial complaint, he was a union member and dues were being deducted from his paycheck. Shortly thereafter, he resigned from the Union, and dues deductions stopped.[9] Thus, he no longer has a personal stake in receiving a declaration addressing the constitutionality of the Union's opt-out window as applied to him. *See Brown*, 822 F.3d at 1165.

A declaration regarding the opt-out window would not affect the defendants' behavior toward Mr. Hendrickson. *See id.* at 1165-66; *Rio Grande Silvery Minnow*, 601 F.3d at 1110. It would serve only to announce that the defendants had harmed him, *see Jordan*, 654 F.3d at 1025, but would have no real-world effect. We thus hold that Mr. Hendrickson's request for prospective relief on Count 1 is moot.[10]

---

[9] Mr. Hendrickson was a union member when he filed his initial complaint in November 2018, but not when he filed his amended complaint in March 2019. Because we look to the date of the plaintiff's original complaint when determining standing, *see S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152-53 (10th Cir. 2013), we consider Mr. Hendrickson's prospective relief request in his non-member capacity as an issue of mootness rather than standing.

[10] No exception to mootness, including those considered by the district court—conduct capable of repetition yet evading review, *FCC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007); voluntary cessation, *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *O'Connor v. Washburn Univ.*, 416 F.3d 1216, 1222 (10th Cir. 2005); and transitory claims, *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991); *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1138 (10th Cir. 2009)—applies here. Insofar as Mr. Hendrickson generally suggests that a declaration would not be moot because "[t]here are countless similarly situated existing employees" a declaration would

2. **Retrospective Relief**

Mr. Hendrickson's request for retrospective damages relief for his back dues fails on the merits under basic contract principles. This part of Count 1 was brought against the Union only.

   a.  *New Mexico law and basic contract principles*[11]

"It is well settled that the relationship existing between a trade union and its members is contractual and that the constitution . . . and regulations, if any, constitute a binding contract between the union and its members . . . , which the courts will enforce, if the contract is free from illegality or invalidity." *Adams v. Int'l Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers*, 262 F.2d 835, 838 (10th Cir. 1958). Under New Mexico contract law, "to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Garcia v. Middle Rio Grande Conservancy Dist.*, 918 P.2d 7, 10 (N.M. 1996) (quotation omitted).

---

benefit, *see* Aplt. Reply Br. at 13, "our cases prevent us from applying the mootness exception based on a risk to others," *Marks v. Colo. Dep't of Corr.*, 976 F.3d 1087, 1095 (10th Cir. 2020). Because we resolve this issue on mootness grounds, we need not address whether Eleventh Amendment immunity bars this claim against the New Mexico Defendants. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (quotation omitted)).

[11] The parties apply New Mexico law to the membership agreements.

"A contract which contravenes a rule of law is unenforceable." *State v. Bankert*, 875 P.2d 370, 376 (N.M. 1994). But "the rights of the parties must necessarily be determined by the law as it was *when the contract was made*." *Town of Koshkonong v. Burton*, 104 U.S. 668, 679 (1881) (emphasis added); *see also Memphis & L. R. R. Co. v. Berry*, 112 U.S. 609, 623 (1884) ("It is, of course, the law in force at the time the transaction is consummated and made effectual, that must be looked to as determining its validity and effect."). This is so because "a contract incorporates the relevant law in force at the time of its creation." *Townsend v. State ex rel. State Highway Dep't*, 871 P.2d 958, 960 (N.M. 1994); *see Crow v. Capitol Bankers Life Ins. Co.*, 891 P.2d 1206, 1211 (N.M. 1995) ("Under traditional contract theory, state laws are incorporated into and form a part of every contract whether or not they are specifically mentioned in the instrument.").[12]

---

[12] *See also Norfolk & W. Ry. Co. v. Am. Train Dispatchers' Ass'n*, 499 U.S. 117, 130 (1991) ("Laws which subsist at the time and place of the making of a contract . . . form a part of it, as fully as if they had been expressly referred to or incorporated in its terms." (quotation omitted)); *Von Hoffman v. City of Quincy*, 71 U.S. (4 Wall.) 535, 550 (1866) ("It is also settled that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms."); *Dillard & Sons Constr., Inc. v. Burnup & Sims Comtec, Inc.*, 51 F.3d 910, 915 (10th Cir. 1995) (collecting cases for the proposition that "[i]t is well settled that the existing applicable law is a part of every contract, the same as if expressly referred to or incorporated in its terms" (quotation omitted)); 5 Corbin on Contracts § 24.26 (2020) ("Words and other symbols must always be interpreted in the light of the surrounding circumstances, and the existing statutes and rules of law are always among these circumstances.").

Thus, "a subsequent change in the law cannot retrospectively alter the parties'
agreement." *Fla. E. Coast Ry. Co. v. CSX Transp., Inc.*, 42 F.3d 1125, 1130 (7th Cir.
1994); *see also id.* ("Whereas the law in effect at the time of execution sheds light on the
parties['] intent, subsequent changes in the law that are not anticipated in the contract
generally have no bearing on the terms of their agreement."); 5 Corbin on Contracts
§ 24.26 (2020) ("[S]tatutes enacted subsequent to the making of a contract are not
incorporated in the contract[,] and . . . when a statute is amended subsequent to formation
of the contract, the amended version is not incorporated.").

As a result, "[c]hanges in decisional law, even constitutional law, do not relieve
parties from their pre-existing contractual obligations." *Fischer v. Governor of N.J.*, ---
F. App'x ----, 2021 WL 141609, at *7 (3d Cir. 2021) (unpublished); *see also Jones v.
Ferguson Pontiac Buick GMC, Inc.*, 374 F. App'x 787, 788 (10th Cir. 2010)
(unpublished) (holding that a "change in the law was not grounds for relief" from a
settlement agreement (citing *Collins v. City of Wichita*, 254 F.2d 837, 839 (10th Cir.
1958))).[13] These basic principles doom Mr. Hendrickson's claim.[14]

---

[13] Although not precedential, we find the reasoning of the unpublished decisions
cited in this opinion to be instructive. *See* 10th Cir. R. 32.1 ("Unpublished decisions are
not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App.
P. 32.1.

[14] A "change of law" may "excuse . . . nonperformance of a contractual
obligation" when, "[a]fter a contract is made, . . . a party's performance is made
impracticable by" such a change of law, "the nonoccurrence of which was a basic
assumption upon which the contract was made." *Cent. Kan. Credit Union v. Mut. Guar.
Corp.*, 102 F.3d 1097, 1102 (10th Cir. 1996) (citing Restatement (Second) of Contracts
§§ 261, 264 (Am. L. Inst. 1981)). But the doctrine of impracticability of performance is

b. *Analysis*

Mr. Hendrickson requested recovery of all dues paid since 2004, or at least since *Janus* was decided in June 2018. His arguments that *Janus* retroactively voids his membership agreements have no merit because he entered valid contracts when he joined the Union.[15]

i. Valid contracts

Mr. Hendrickson entered valid contracts with the Union in 2004, 2007, and 2017. They contained clear language and were the product of an offer, an acceptance, consideration, and mutual assent. *See Garcia*, 918 P.2d at 10.[16]

Mr. Hendrickson does not allege the membership agreements contravened the law in effect when the contracts were created. *See Bankert*, 875 P.2d at 376. When he signed his agreements, *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), was the

---

"inapposite" when the party seeking to invoke the doctrine is "under no . . . obligation to perform any act in the future." *See id.* at 1103. Thus, impracticability provides no relief when, for instance, a party "seeks . . . to reclaim funds it has already paid and from which it has derived a benefit," *see id.*, as Mr. Hendrickson does here.

[15] Mr. Hendrickson argues that *Janus* renders his membership agreements "voidable," "void[]," and "unenforceable." *See* Aplt. Br. at 12, 13, 17. In contract law, these terms have different meanings. *See* 1 Corbin on Contracts §§ 1.6, 1.7, 1.8 (2020). Mr. Hendrickson does not explain which term should apply here. Our decision is the same under any of these terms.

[16] Indeed, by entering these agreements, not only did Mr. Hendrickson "obtain rights and benefits that are not enjoyed by nonmembers, such as the right to vote on ratification of a [collective bargaining agreement]," Suppl. App. at 19, but he also availed himself of these benefits, *see id.* at 35-36, 46, 116.

governing law. And in *Abood*, the Supreme Court upheld a requirement for public-sector non-union members to pay agency fees for non-partisan union activity. *See id.* at 211, 215, 232, 235-36. Mr. Hendrickson does not allege that his contracts with the Union violated *Abood* or any other law in force when he signed them.

In June 2018, *Janus* overruled *Abood*. The Supreme Court held that requiring non-members to pay agency fees to public-sector unions violated the First Amendment. *See* 138 S. Ct. at 2459-60. Doing so "violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern." 138 S. Ct. at 2460.

*Janus* thus changed the choices a public employee faces in deciding whether to join a union. Under *Abood*, the decision was between (1) joining a union and paying union dues or (2) not joining a union and paying agency fees. Under *Janus*, the decision is between (1) joining a union and paying union dues or (2) not joining a union and paying nothing. Had *Janus* been in force when Mr. Hendrickson signed his union contracts, he therefore would have faced a different calculus.

But *Janus* does not support his request for back dues. A change in law that alters the original considerations for entering an agreement does not allow retroactive invalidation of that agreement. *See Town of Koshkonong*, 104 U.S. at 679; *Townsend*, 871 P.2d at 960; *Fla. E. Coast Ry. Co.*, 42 F.3d at 1130; *Jones*, 374 F. App'x at 788. Indeed, in *Fischer*, the Third Circuit considered this exact question—whether *Janus* "abrogat[ed] the commitments set forth in the [plaintiffs' union] agreements." *See*

16

*Fischer*, 2021 WL 141609, at \*7. The court noted that the "[p]laintiffs chose to enter into membership agreements with [the union] . . . in exchange for valuable consideration." *Id.* at \*8. And "[b]y signing the agreements, [p]laintiffs assumed the risk that subsequent changes in the law could alter the cost-benefit balance of their bargain." *Id. Janus* thus did not permit the plaintiffs to renege on their contractual obligations. *See id.* We agree with this reasoning.

Mr. Hendrickson thrice signed agreements to become a union member and to have dues deducted from his paycheck. Each agreement was a valid, enforceable contract. A change in the law does not retroactively render the agreements void or voidable. *Janus* thus provides no basis for Mr. Hendrickson to recover the dues he previously paid.[17]

In reaching this conclusion, "[w]e join the swelling chorus of courts recognizing that *Janus* does not extend a First Amendment right to avoid paying union dues." *Belgau v. Inslee*, 975 F.3d 940, 951 (9th Cir. 2020), *petition for cert. filed*, No. 20-1120 (U.S. Feb. 11, 2021); *see id.* at 951 n.5 (collecting cases); *see also Oliver v. Serv. Emps. Int'l Union Local 668*, 830 F. App'x 76, 80 (3d Cir. 2020) (unpublished) ("By choosing to become a Union member, [the plaintiff] affirmatively consented to paying union dues," and thus "was not entitled to a refund based on *Janus*."); *Bennett v. Council 31 of the*

---

[17] Because we find that Mr. Hendrickson's underlying claim for back dues against the Union fails, we do not additionally consider whether the Union meets the "state actor" element for this § 1983 claim. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

17

*AFSCME, AFL-CIO*, No. 20-1621, --- F.3d ----, 2021 WL 939194, at \*4-6 (7th Cir. 2021).

> ii. Mr. Hendrickson's arguments

Mr. Hendrickson's arguments are all variations on his contention that he can apply *Janus* retroactively to void his membership agreements. Each argument fails because *Janus* does not change that he entered valid contracts.

> 1) Affirmative consent

Mr. Hendrickson argues his agreements should now be invalid under *Janus* because he did not provide "affirmative consent . . . to deduct union dues." *See* Aplt. Br. at 10 (emphasis omitted). But he did provide affirmative consent by agreeing to the dues-authorization provision. And *Janus* concerned the consent of non-members, not union members like Mr. Hendrickson. His argument thus lacks a factual or legal basis.

The *Janus* Court concluded its opinion with the following direction regarding affirmative consent:

> Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

138 S. Ct. at 2486 (citations omitted).

This passage shows that *Janus* addressed only whether non-union members could be required to pay agency fees. *See Belgau*, 975 F.3d at 952. Applying its holding to members like Mr. Hendrickson "misconstrues *Janus*." *See id. Janus* "in no way created a new First Amendment waiver requirement for union members before dues are deducted pursuant to a voluntary agreement." *Id.*[18] Mr. Hendrickson, a union member, had signed agreements with the Union authorizing the deduction of dues. Unlike non-union members, who had not signed any agreement to pay agency fees, he affirmatively consented to pay dues. *Janus*'s affirmative consent analysis provides no basis for Mr. Hendrickson to recover damages.

2) Compulsion

Similarly, Mr. Hendrickson contends that in light of *Janus*, he was "compelled" to join the Union because he faced a "false dichotomy" of paying union dues or agency fees. *See* Suppl. App. at 9. This repackaged version of his "affirmative consent" argument fares no better. Mr. Hendrickson was not compelled. He was free to join the Union or not. *See* N.M. Stat. §§10-7E-19(B); 10-7E-20(B). "[R]egret[ting] [a] prior decision to join the Union . . . does not render [a] knowing and voluntary choice to join nonconsensual." *Oliver*, 830 F. App'x at 79. And his having "had the option of paying

---

[18] Because *Janus* did not create such a new waiver requirement, Mr. Hendrickson's argument that "he could not have voluntarily, knowingly, or intelligently waived his right not to join or pay a union" before the Supreme Court decided *Janus* has no merit. *See* Aplt. Br. at 11.

19

less as agency fees pre-*Janus*, or that *Janus* made that lesser amount zero by invalidating agency fees, does not establish coercion." *Belgau*, 975 F.3d at 950.

### 3) Mutual mistake

Mr. Hendrickson relatedly argues his membership agreements should be void because they were based on "mutual mistake." *See* Aplt. Br. at 12. He asserts that he "discovered the mistake that agency fees were constitutional when the Supreme Court ruled otherwise in *Janus*," *id.* at 13, and that his agreement should be voided as a result of this mutual mistake. This argument again relies on a retroactive application of *Janus*. But *Janus* does not support mutual mistake.

Under New Mexico law, a party can challenge a contract "on the basis of mistake" when "there is a mutual mistake; that is, where there has been a meeting of minds, an agreement actually entered into, but the contract . . . , in its written form, does not express what was really intended by the parties thereto." *See Morris v. Merch.*, 423 P.2d 606, 608 (N.M. 1967) (quotation omitted). A party can also contest a contract when "there has been a mistake of one party, accompanied by fraud or other inequitable conduct of the remaining parties." *See id.* (quotation omitted). But "[i]t is not a proper function of the courts to relieve either party to a contract from its binding effect where it has been entered into without fraud or imposition and is not due to a mistake against which equity will afford relief." *In re Tocci*, 112 P.2d 515, 521 (N.M. 1941).

Mutual mistake thus does not apply when "subsequent events" show an agreement "to have been unwise or unfortunate." *See id.*; *see also State ex rel. State Highway &*

20

*Transp. Dep't v. Garley*, 806 P.2d 32, 36 (N.M. 1991) ("[T]he erroneous belief must relate to the facts as they exist at the time of the making of the contract." (quoting Restatement (Second) of Contracts § 151 (Am. L. Inst. 1979))); Restatement (Second) of Contracts § 151 (Am. L. Inst. 1981, Oct. 2020 update) ("The word 'mistake' is not used [in the Restatement], as it is sometimes used in common speech, to refer to an improvident act . . . .").

Mr. Hendrickson does not suggest the membership agreements failed to express his intent when he signed. *See Morris*, 423 P.2d at 608. Nor does he suggest that the Union deceived him as to the Supreme Court's holding in *Abood*. *See In re Tocci*, 112 P.2d at 521. Rather, he argues that if had he known when he entered the contract that the Supreme Court was going to overrule *Abood* in *Janus*, his intent would have been different. But what he describes is buyer's remorse, not mutual mistake. *See id.* The doctrine of mutual mistake does not apply here.

### 4) Plea bargaining case law

In discussing mutual mistake, Mr. Hendrickson argues that *Janus* supports voiding his contract under plea bargaining case law. His reliance on *United States v. Bunner*, 134 F.3d 1000 (10th Cir. 1998), is misplaced.

*Bunner* addressed whether the obligations under a plea agreement should be dischargeable following a Supreme Court decision holding that the conduct underlying the defendant's offense was no longer a crime. *See* 134 F.3d at 1002-05. The opinion explained that "[s]ubsequent to entering the agreement, an intervening change in the law

21

destroyed the factual basis supporting Defendant's conviction." *Id.* at 1005.  This court applied the "doctrine of frustration of purpose," which allows a party to a contract to be "discharged from performing" when a "supervening event does not render performance impossible" but makes "one party's performance . . . virtually worthless to the other." *Id.* at 1004.  We held that "the plea agreement no longer bound the parties." *Id.* at 1005.

*Bunner* does not help Mr. Hendrickson.  There, after the change in law, the defendant could no longer be guilty, and thus the plea agreement had no purpose.  By contrast, even after *Janus* changed the law, Mr. Hendrickson could still be a member of the Union, and his membership agreement continued to have a purpose.  Again, *Janus* concerned non-member agency fees and has nothing to do with Mr. Hendrickson's agreeing to pay dues for his union membership.

*Brady v. United States*, 397 U.S. 742 (1970), is a more pertinent plea bargaining case.  In *Brady*, the Supreme Court asked whether its recent decision changing the law to eliminate the death penalty from an offense also "invalidat[ed] . . . every plea of guilty entered [for that offense], at least when the fear of death is shown to have been a factor in the plea." *Id.* at 746.  "Although [the defendant's] plea of guilty may well have been motivated in part by a desire to avoid a possible death penalty," the Court found that the change in law did not invalidate the defendant's plea agreement. *See id.* at 758.  "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended . . . the likely penalties attached to alternative courses of action." *Id.* at 757.  "[A] voluntary plea of guilty intelligently

22

made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Id.*

*Brady* dealt with a change in law that altered a defendant's incentives to enter an agreement. If the change had been known at the time of the plea, the deal may have been less attractive, which is the scenario we have here. Had Mr. Hendrickson known that *Janus* would overturn *Abood*, his decision to join the Union may have been less appealing because the alternative would not have required him to pay agency fees.

But *Brady* shows that even when a "later judicial decision[]" changes the "calculus" motivating an agreement, the agreement does not become void or voidable. *See id.* Indeed, we have stated that "Supreme Court precedent is quite explicit that as part of a plea agreement, criminal defendants may waive both rights in existence and those that result from unanticipated later judicial determinations." *United States v. Porter*, 405 F.3d 1136, 1144 (10th Cir. 2005); *see also Bailey v. Cowley*, 914 F.2d 1438, 1441 (10th Cir. 1990) ("One of the risks a defendant assumes when he pleads guilty is that the consequences he seeks to avoid will not be later nullified by a change in the law."). The cases on plea bargaining thus fail to provide a basis for Mr. Hendrickson to recover damages.

### 5) Opt-out window

Finally, Mr. Hendrickson suggests that *Janus* should retroactively invalidate the membership opt-out window because limiting his ability to terminate his dues payments

to two weeks a year violates the First Amendment right of association.  We reject this argument based on Supreme Court precedent.

In *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991), the Supreme Court held that when "[t]he parties themselves . . . determine[d] the scope of their legal obligations, and any restrictions that" the parties placed on their constitutional rights were "self-imposed," then "requir[ing] those making promises to keep them" does not offend the First Amendment.  *See id.* at 671.  As another court put it, "the First Amendment does not preclude the enforcement of 'legal obligations' that are bargained-for and 'self-imposed' under state contract law."  *Fisk v. Inslee*, 759 F. App'x 632, 633 (9th Cir. 2019) (unpublished) (quoting *Cohen*, 501 U.S. at 668-71).  *Janus* therefore does not provide a basis for Mr. Hendrickson to challenge the opt-out window to recover back dues.

\*　　\*　　\*　　\*

We hold Mr. Hendrickson's claim against the Union for retrospective relief on Count 1 fails on the merits because his dues were deducted under valid contractual agreements.  His claim for prospective relief is moot.  We therefore affirm the district court's decision on Count 1.

## B. *Count 2 - Exclusive Representation*

Mr. Hendrickson objects to the Union's serving as his exclusive representative. This claim fails against (1) the New Mexico Defendants because they have Eleventh Amendment immunity and (2) the Union on the merits.

24

1. **New Mexico Defendants**

The New Mexico Defendants are not proper parties under *Ex parte Young*, 209 U.S. 123 (1908), and thus have Eleventh Amendment immunity.

a. *Eleventh Amendment and* Ex parte Young

The Eleventh Amendment constitutionalizes the doctrine of state sovereign immunity. It provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Under this provision, states enjoy sovereign immunity from suit. *See Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). This immunity extends to suits brought by citizens against their own state. *See Hans v. Louisiana,* 134 U.S. 1, 10-11 (1890); *Amisub (PSL), Inc. v. State of Colo. Dep't of Soc. Servs.*, 879 F.2d 789, 792 (10th Cir. 1989). It also extends to "suit[s] against a state official in his or her official capacity" because such suits are "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Eleventh Amendment immunity "is not absolute." *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). Under the *Ex parte Young* exception, a plaintiff may sue individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks only

prospective relief. *See Ex parte Young*, 209 U.S. 159-60; *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

To satisfy this exception, the named state official "must have some connection with the enforcement" of the challenged statute. *Ex parte Young*, 209 U.S. at 157. Otherwise, the suit is "merely making [the official] a party as a representative of the state" and therefore impermissibly "attempting to make the state a party." *Id.*

"The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact." *Id.* *Ex parte Young* does not require that the state official "have a 'special connection' to the unconstitutional act or conduct." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007). But it does require that the state official "have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty." *Id.* (quoting *Ex parte Young*, 209 U.S. at 157); *see also* 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3524.3 (3d ed., Oct. 2020 update) ("[T]he duty must be more than a mere general duty to enforce the law.").

b. *Analysis*

Mr. Hendrickson sued the Governor and Attorney General of New Mexico in their official capacities. But these officeholders do not enforce the exclusive representation statute. Rather, members of the Public Employee Labor Relations Board ("PELRB") do. The Governor and Attorney General therefore do not fall within the *Ex parte Young* exception and thus have Eleventh Amendment immunity to this suit.

26

i.  PEBA and PELRB

The Public Employee Bargaining Act ("PEBA") provides for a union to serve as the exclusive representative for the employees in a bargaining unit.  *See* N.M. Stat. § 10-7E-14.  The PELRB "has the power to enforce provisions of the [PEBA]."  *See id.* § 10-7E-9(F).[19]  For example, the PELRB "shall promulgate rules . . . for . . . the selection, certification and decertification of exclusive representatives."  *Id.* § 10-7E-9(A), (A)(2).

The PELRB "consists of three members appointed by the governor."  *See* N.M. Stat. § 10-7E-8(A).  "The governor shall appoint one member recommended by organized labor representatives actively involved in representing public employees, one member recommended by public employers actively involved in collective bargaining and one member jointly recommended by the other two appointees."  *Id.*

The New Mexico Supreme Court has held the governor cannot remove these PELRB members at will.  *See AFSCME v. Martinez*, 257 P.3d 952, 953 (N.M. 2011).  The court observed that "[b]ecause the PELRB is empowered to make decisions that may adversely affect the executive branch, the PELRB must remain free from the executive's control . . . or coercive influence."  *Id.* at 956.

---

[19] If necessary, the PELRB may request that a court enforce its orders.  *See* N.M. Stat. § 10-7E-23(A).

ii. Application of *Ex parte Young*

The PEBA empowers the PELRB—not the Governor or the Attorney General—to enforce New Mexico's exclusive representation law. *See* N.M. Stat. § 10-7E-9. Moreover, the New Mexico Supreme Court has insulated the PELRB from other executive branch officials. *See Martinez*, 257 P.3d at 956. Thus, PELRB members enforce the statute for the purposes of *Ex parte Young*. The Governor and Attorney General do not, and they therefore have Eleventh Amendment immunity to Mr. Hendrickson's exclusive representation claim.

Our decision in *Chamber of Commerce of the United States of America v. Edmondson*, 594 F.3d 742 (10th Cir. 2010), supports this conclusion. There, we considered whether the attorney general of Oklahoma had Eleventh Amendment immunity to a suit challenging a statute "regulat[ing] illegal immigration and verification of employment eligibility." *See id.* at 750, 759-60. We concluded that he did not insofar as "[a]n injunction would prevent him from filing lawsuits or defending against suits on the basis of" violations of one part of the statute. *See id.* at 758, 760. But the plaintiffs had "not shown us that the Attorney General ha[d] a particular duty to enforce" another part of the statute. *Id.* at 760. Their claims based on this latter part, therefore, "f[ell] outside the scope of the *Ex parte Young* exception," and "[t]he Attorney General [wa]s thus entitled to immunity as to that challenge." *Id.*; *see also Day v. Sebelius*, 376 F. Supp. 2d 1022, 1025, 1031 (D. Kan. 2005) (finding that the Kansas governor's "general enforcement power . . . [wa]s not sufficient to establish the connection to [a challenged]

28

statute required to meet the *Ex parte Young* exception to Eleventh Amendment immunity"), *aff'd sub nom. Day v. Bond*, 500 F.3d 1127 (10th Cir. 2007).

Similarly, in *Cressman v. Thompson*, 719 F.3d 1139 (10th Cir. 2013), we considered whether a motor vehicle clerk, who allegedly had responsibility for interpreting the policies of the Oklahoma Department of Public Safety, had immunity to a suit that challenged a statute regulating license-plate images. *See id.* at 1143, 1146. Because the clerk did not "have a particular duty to enforce the challenged statute," she was not a "proper state official[] for suit under *Ex parte Young*." *See id.* at 1146 & n.8.

Here, as in *Edmondson* and *Cressman*, neither the Governor nor the Attorney General has a particular duty to enforce the challenged statute. Rather, their connection to the exclusive representation statute stems from their general enforcement power. But this does not suffice for *Ex parte Young*. They therefore are not proper parties, and they have Eleventh Amendment immunity.

*Bishop v. Oklahoma*, 333 F. App'x 361 (10th Cir. 2009) (unpublished), which the parties discuss at length, also supports immunity. There, we considered whether "the Governor and Attorney General of the State of Oklahoma . . . [we]re sufficiently connected to the enforcement of the Oklahoma Constitution's marriage provisions" to permit suit. *Id.* at 362.[20] We concluded that the "officials' generalized duty to enforce

---

[20] We ultimately resolved *Bishop* as a matter of standing rather than Eleventh Amendment immunity because "the unique procedural stance of th[e] appeal ha[d] deprived th[e] Court of a full briefing of the [*Ex parte Young*] issues." *See Bishop*, 333 F. App'x at 363-64. But as we noted in *Cressman*, "there is a common thread between Article III standing analysis and *Ex parte Young* analysis." *Cressman*, 719 F.3d at 1146

state law, alone, [wa]s insufficient to subject them to a suit challenging a constitutional amendment they have no specific duty to enforce." *Id.* at 365. Because the judiciary was responsible for administration of marriage licenses, the "claims [we]re simply not connected to the duties of the Attorney General or the Governor." *See id.* Likewise, here, the PELRB bears responsibility for the provision at issue, and Mr. Hendrickson's claims thus are not connected to the New Mexico Defendants.

Mr. Hendrickson relies on *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014), and *Petrella v. Brownback*, 697 F.3d 1285 (10th Cir. 2012),[21] but they do not support the contrary conclusion. In *Kitchen*, we held the governor and attorney general of Utah were proper parties to a suit challenging Utah's laws banning same-sex marriage because in Utah, unlike in Oklahoma, "marriage licenses are issued not by court clerks but by county clerks." *See* 755 F.3d at 1199-202, 1204. The defendants' "actual exercise of supervisory power and their authority to compel compliance from county clerks and other officials provide[d] the requisite nexus" between the defendants and the provision at

---

n.8; *see also Bishop*, 333 F. App'x at 364 n.5 (observing that "[t]he 'necessary connection' language in [*Ex parte*] *Young*" is the "common denominator" of both a standing inquiry and "whether our jurisdiction over the defendants is proper under the doctrine of *Ex parte Young*" (quoting *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004))).

[21] Mr. Hendrickson also points to *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017), and *Harris v. Quinn*, 573 U.S. 616 (2014). *Safe Streets* did not discuss the *Ex parte Young* requirement at issue here. *See id.* at 896, 901-02, 906 n.19, 912. And *Harris* did not discuss *Ex parte Young* at all.

30

issue. *See id.* at 1204. Here though, this inquiry fails to show the requisite nexus between the New Mexico Defendants and the PELRB members.

Similarly, in *Petrella* we determined the governor and attorney general of Kansas to be proper parties to a suit challenging the constitutionality of Kansas's school-funding laws. *See* 697 F.3d at 1289, 1293-94. We found it cannot "be disputed that the Governor and Attorney General of [a] state . . . have responsibility for the enforcement of the laws of the state," they had general law enforcement powers, and there was no indication the statutory provisions at issue fell outside the scope of these general enforcement powers. *See id.* at 1289-91, 1294. But here, the statutory scheme vests enforcement power in the PELRB, a body independent of the Governor and the Attorney General. We thus do not find Mr. Hendrickson's arguments availing.

\* \* \* \*

We hold that Mr. Hendrickson's claim against the New Mexico Defendants on Count 2 must be dismissed because they are not proper parties to this suit under *Ex parte Young* and thus have Eleventh Amendment immunity.

2. **Union**

The Supreme Court's treatment of exclusive bargaining representation—including in *Janus* itself—forecloses Mr. Hendrickson's exclusive representation claim against the Union.[22]

---

[22] Our affirmance of the district court's dismissal of the New Mexico Defendants based on Eleventh Amendment immunity leaves only the Union as a defendant on the exclusive representation claim. As with Count 1, *see supra* n.17, because we find that

31

a. *Additional legal background*

The Supreme Court has discussed exclusive representation at length in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), and in *Janus*.

i. <u>*Knight*</u>

In *Knight*, the Supreme Court considered the constitutionality of exclusive representation. *See* 465 U.S. at 273. State law provided for bargaining units to select an exclusive representative based on majority vote. *See id.* at 273-74. Several college faculty who were not members of the union designated as the exclusive representative objected. *See id.* at 278. They claimed that limiting participation in meetings to the exclusive representative violated their First Amendment rights of speech and association. *See id.* at 288.

The Court found that, although exclusive representation might "amplif[y] [the representative's] voice," this did not mean the challengers' right to speak had been infringed. *See id.* at 288-89. Similarly, the Court found that although individuals may "feel some pressure to join the exclusive representative," such pressure did not impair their freedom of association. *See id.* at 289-90; *see also id.* at 290 ("[T]he pressure is no different from the pressure to join a majority party that persons in the minority always

Mr. Hendrickson's underlying claim regarding exclusive representation fails, we do not additionally consider whether the Union meets the "state actor" element for this § 1983 claim. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

feel.  Such pressure is inherent in our system of government; it does not create an unconstitutional inhibition on associational freedom.").

Thus, "restriction of participation . . . to the faculty's exclusive representative" did not infringe "speech and associational rights."  *See id.* at 288.  "The state has in no way restrained [the faculty's] freedom to speak on any education-related issue or their freedom to associate *or not to associate* with whom they please, including the exclusive representative."  *Id.* (emphasis added).  The Court therefore held that "restriction on participation . . . of professional employees within the bargaining unit who are not members of the exclusive representative and who may disagree with its views" does not "violate[] the[ir] constitutional rights."  *Id.* at 273.

ii.  <u>*Janus*</u>

*Janus* explained that the union in that case was an exclusive representative.  *See Janus*, 138 S. Ct. at 2460.  And the Court indicated its ruling on agency fees would not prevent such exclusive representation:  "[I]t is simply not true that unions will refuse to serve as the exclusive representative of all employees in the unit if they are not given agency fees."  *Id.* at 2467.  The Court acknowledged that "[i]t is . . . not disputed that the State may require that a union serve as exclusive bargaining agent for its employees."  *Id.* at 2478.  It further said, "States can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions."  *Id.* at 2485 n.27.

33

b. *Analysis*

Mr. Hendrickson argues exclusive representation requires him to "allow the Union to speak on his behalf," and this "compelled association" violates his First Amendment rights. *See* Aplt. Br. at 45. He contends that "as a condition of his employment, [he] must allow the Union to speak" for him regarding "the sort of policy decisions that *Janus* recognized are necessarily matters of public concern," including his salary. *See id.* Although Mr. Hendrickson acknowledges that he "retains the right to speak for himself," he contends this "does not resolve the fact that the Union organizes and negotiates as his representative in his employment relations." *Id.* at 46. He concludes that "[l]egally compelling [him] to associate with the Union demeans his First Amendment rights." *Id.* But *Knight* and *Janus* foreclose his claim.

*Knight* found exclusive representation constitutionally permissible. Exclusive representation does not violate a nonmember's "freedom to speak" or "freedom to associate," and it also does not violate one's freedom "not to associate." *See* 465 U.S. at 288. *Knight* thus belies Mr. Hendrickson's claim that exclusive representation imposes compulsion in violation of the First Amendment.

*Janus* reinforces this reading. As noted, the *Janus* Court stated that "[i]t is . . . not disputed that the State may require that a union serve as exclusive bargaining agent for its employees." *Janus*, 138 S. Ct. at 2478. And exclusive representatives have a "duty of providing fair representation for nonmembers." *See id.* at 2467-68. Even though exclusive representatives speak on behalf of nonmembers, the Court stated that, with the

34

exception of agency fees, "[s]tates can keep their labor-relations systems exactly as they are." *Id.* at 2485 n.27.

Finally, "[a]ll Circuits that have addressed this issue subsequent to the *Janus* decision have concluded that exclusive representation remains constitutional." *Oliver v. Serv. Emps. Int'l Union Local 668*, 830 F. App'x 76, 80 n.4 (3d Cir. 2020) (unpublished); *see also Reisman v. Associated Facs. of Univ. of Me.*, 939 F.3d 409, 414 (1st Cir. 2019), *cert. denied*, 141 S. Ct. 445 (2020); *Jarvis v. Cuomo*, 660 F. App'x 72, 74 (2d Cir. 2016) (unpublished); *Akers v. Md. State Educ. Ass'n*, No. 19-1524, --- F.3d ----, 2021 WL 852086, at *5 n.3 (4th Cir. 2021); *Thompson v. Marietta Educ. Ass'n*, 972 F.3d 809, 813-14 (6th Cir. 2020), *petition for cert. filed*, No. 20-1019 (U.S. Jan. 22, 2021); *Ocol v. Chi. Tchrs. Union*, 982 F.3d 529, 532-33 (7th Cir. 2020); *Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir. 2018); *Mentele v. Inslee*, 916 F.3d 783, 786-90 (9th Cir. 2019), *cert. denied sub nom. Miller v. Inslee*, 140 S. Ct. 114 (2019).

## III. CONCLUSION

We affirm the district court's decisions to grant the Union's motion for summary judgment and the New Mexico Defendants' motion to dismiss. We remand to the district court with instructions to amend its judgment to reflect that (1) the dismissal of Mr. Hendrickson's request for prospective relief on Count 1 as moot and (2) the dismissal of Count 2 against the New Mexico Defendants based on Eleventh Amendment sovereign immunity, are both "without prejudice." *See N.M. Health Connections v. U.S. Dep't of*

*Health & Human Servs.*, 946 F.3d 1138, 1167 (10th Cir. 2019); *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019).[23]

---

[23] Also pending before us is a motion from the Union to take judicial notice of (1) portions of the practice manual for the PELRB, and (2) a decision and order from the PELRB.  No party opposes the motion.  We may take judicial notice of these documents. *See* Fed. R. Evid. 201(b), (b)(2); *Renewable Fuels Ass'n v. EPA*, 948 F.3d 1206, 1258 (10th Cir. 2020); *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 702 n.22 (10th Cir. 2009).  We grant the motion, though we have not relied on these documents in reaching our decision.